UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
MAGISTRATE JUDGE_____

FILED
IN CLERKS OFFICE

2006 JUL 10 P 2: 57

U.S. DISTRICT COURT
DISTRICT OF MASS.

****************************************************

VERMONT MUTUAL INSURANCE COMPANY,
      Plaintiff

v.

MARY E. PETIT AND FRANK PETIT, TRUSTEES
OF 93A HILLSIDE STREET NOMINEE TRUST
and DADGAR INSURANCE AGENCY, INC.,
      Defendants

****************************************************

06 CA 11212 JLT

CIVIL ACTION
NO. RECEIPT # 73734
AMOUNT $ 350
SUMMONS ISSUED 4
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 7/14/06

## COMPLAINT FOR DECLARATORY JUDGMENT

This is an action for declaratory relief, filed by plaintiff Vermont Mutual Insurance

Company ("Vermont Mutual"), pursuant to the provisions of the Declaratory Judgments Act, 28

U.S.C. §2201, and Federal Rule of Civil Procedure 57.

1.    This action for declaratory relief has been brought for the purpose of obtaining

this Court's determination concerning the respective rights and obligations of the parties in

connection with a claim for coverage under a property insurance policy issued by Vermont

Mutual to defendant 93A Hillside Street Nominee Trust (the "Trust").

2.    An actual and justiciable controversy exists among the parties as to which a

declaratory judgment setting forth their respective rights and obligations in connection with said

claim is necessary and appropriate.

### PARTIES

3.    Plaintiff Vermont Mutual is a corporation duly organized under the laws of the

State of Vermont and having a principal place of business in Montpelier, Vermont.

4.    Upon information and belief, the Trust is a Massachusetts real estate trust, whose

trustees are Mary E. Petit ("Mrs. Petit") and Frank Petit ("Mr. Petit") and which purchased the real property and a building containing three (3) rental units located at 93A Hillside Street, Boston, Massachusetts (the "Premises") in November 2003.

5.     Upon information and belief, Mrs. Petit and Mr. Petit were, at all relevant times, residents of the State of Florida.

6.     Upon information and belief, defendant Dadgar Insurance Agency, Inc. (Dadgar") is a corporation duly organized under the laws of the Commonwealth of Massachusetts and having a principal place of business in Woburn, Massachusetts.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1332(a)(1), in that the matter in controversy exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, and is between citizens of different States. This Court also has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §2201, in that there is an actual controversy as to which Vermont Mutual seeks a judicial declaration of its rights and obligations.

8.     Venue is proper in this Court, pursuant to 28 U.S.C. §1391(a)(2), in that a substantial part of the events or omissions giving rise to the claim occurred and/or the property that is the subject of the action is situated.

## THE APPLICATION FOR COVERAGE

9.     At all relevant times and pursuant to a valid agency agreement, Dadgar was an authorized insurance agent for Vermont Mutual in Massachusetts.

10.    Upon information and belief, on or about November 4, 2003, Mrs. Petit, acting on

2

behalf of the Trust, contacted Dadgar by telephone for the purpose of applying for a policy of insurance with which to insure the Premises.

11.     Upon information and belief, on the basis of information provided by Mrs. Petit during this telephone conversation, Dadgar completed a form relating to property coverage (the "Form"), captioned "Vermont Mutual Group Automated Dwelling Fire Application" (the "Application") on one side of the Form and captioned "Vermont Mutual Group Dwelling Questionnaire" (the "Dwelling Questionnaire") on the other side of the Form.  True copies of the Application and Dwelling Questionnaire portions of the Form, as completed by Dadgar and prior to their execution by Mrs. Petit on behalf of the Trust, are attached hereto as Exhibit 1 and Exhibit 2, respectively.

12.     The Dwelling Questionnaire contained the following question:

13.     What class of tenants reside in this building?  _____

Working class _____ Other:  Please Specify _____

Professional _____ (Student occupancy is not acceptable)

13.     Upon information and belief, based upon information provided by Mrs. Petit and in response to the question on the Dwelling Questionnaire, "What class of tenants reside in this building?", Dadgar circled the words "Working class".

14.     The Dwelling Questionnaire, as completed by Dadgar, did not identify or otherwise refer to students as occupants of the Premises.

15.     Upon information and belief, upon completing the Application and the Dwelling Questionnaire portions of the Form, Dadgar sent the Form to Mrs. Petit by telecopier.

16.     Upon information and belief, Mrs. Petit reviewed the Application and the

Dwelling Questionnaire portions of the Form, as completed by Dadgar, and without making any changes or written notations on the Form, executed both the Application and the Dwelling Questionnaire portions of the Form on behalf of the Trust (the "Executed Form"). True copies of the Application and the Dwelling Questionnaire portions of the Executed Form are attached hereto as Exhibit 3 and Exhibit 4, respectively.

17.    Dadgar submitted the Executed Form to Vermont Mutual.

18.    Vermont Mutual relied upon the information contained in the Executed Form in determining whether to underwrite insurance coverage for the Premises.

19.    The information contained in the Dwelling Questionnaire portion of the Executed Form which indicated that occupants of the Premises were not students was material to Vermont Mutual's underwriting decision, *i.e.*, based upon its underwriting guidelines, Vermont Mutual would not have underwritten property coverage for the Premises if the information contained in the Dwelling Questionnaire had indicated that occupants of the Premises included students.

20.    Based upon the information contained in the Executed Form, Vermont Mutual issued Dwelling Fire Policy no. DF1 3-04-07-19 (the "Vermont Mutual Policy"), which afforded, *inter alia*, property coverage for the Premises, subject to all applicable terms, conditions, provisions and exclusions, for the period from November 14, 2003 to November 14, 2004.

**THE VERMONT MUTUAL POLICY**

21.    The Vermont Mutual Policy contained, *inter alia*, the following language:

**DWELLING FIRE POLICY – DECLARATIONS**

...

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions.

4

| PROPERTY COVERAGES | LIMIT OF LIABILITY |
|---|---|
| A.    Dwelling | $500,000 |
| ... | |
| D.    Fair Rental Value (1/12 per month) | $23,000 |
| ... | |

## DWELLING PROPERTY – SPECIAL FORM

...

## COVERAGES

This insurance applies to the Described Location, Coverages for which a Limit of Liability is shown and Perils Insured Against for which a Premium is stated.

## COVERAGE A – DWELLING

We cover:

1.    the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling;

...

*See* D109 (7-88)
DP 00 03 07 88, Page 1 of 8.

...

## COVERAGE D – FAIR RENTAL VALUE

If a loss to property described in Coverage A, B or C by a Peril Insured Against under this policy Makes that part of the Described Location rented to others or held for rental by you unfit for its normal use, we cover its:

**Fair Rental Value,** meaning the fair rental value of that part of the Described Location rented to Others or held for rental by you less any expenses that do not continue while that part of the Described Location rented or held for rental is not fit to live in.

...

*See* D109 (7-88)
DP 00 03 07 88, Page 2 of 8.

...

## CONDITIONS

...

3.    **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, you have:

a.    intentionally concealed or misrepresented any material fact or circumstance;

b.    engaged in fraudulent conduct; or

c.    made false statements;

relating to this insurance.

4.    **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

...

d.    as often as we reasonably require:

...

(3)    submit to examination under oath, while not in the presence of any other named insured, and sign the same.

e.    send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1)    the time and cause of loss;

...

*See* D109 (7-88)
DP 00 03 07 88, Page 6 of 8.

...

6

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – MASSACHUSETTS

…

## GENERAL EXCLUSIONS

…

3.    **Concealment Or Fraud**
       With respect to all persons insured under this policy, we provide no coverage for loss if, whether before or after a loss, one or more persons insured under this policy have:

   **a.**    Intentionally concealed or misrepresented any material fact or circumstance;

   **b.**    Engaged in fraudulent conduct; or

   **c.**    Made false statements;

   relating to this insurance.

…

*See* **DP 01 20 10 99, Page 1 of 5**.

…

22.    Vermont Mutual subsequently renewed the Vermont Mutual Policy for the period from November 14, 2004 to November 14, 2005, and for the period from November 14, 2005 to November 14, 2006.

## FACTS COMMON TO ALL CLAIMS

23.    Upon information and belief, at and prior to the time the Trust purchased the Premises in November 2003, Mrs. Petit knew that there were Northeastern University "coop" students who had leased and/or occupied rental units in the Premises.

24.    The fact that Northeastern University "coop" students had leased and/or occupied

7

rental units in the Premises was not disclosed on the Form or the Executed Form, including but not limited to the Dwelling Questionnaire.

25.     At the time it submitted the Executed Form to Vermont Mutual, Dadgar did not orally or in writing disclose to Vermont Mutual the fact that Northeastern University "coop" students had leased and/or occupied rental units in the Premises.

26.     Upon information and belief, subsequent to its purchase of the Premises, the Trust, by and through Mrs. Petit, continued to lease and/or allow occupation of rental units in the Premises to Northeastern University "coop" students and/or to other college students.

27.     Subsequent to its purchase of the Premises, the Trust did not orally or in writing disclose to Vermont Mutual the fact that the Trust had continued to lease and/or to allow occupation of rental units in the Premises to Northeastern University "coop" students and/or to other college students.

28.     Subsequent to the Trust's purchase of the Premises, Dadgar did not orally or in writing disclose to Vermont Mutual the fact that the Trust had continued to lease and/or allow occupation of rental units in the Premises to Northeastern University "coop" students and/or to other college students.

29.     On or about March 3, 2006, there was a fire inside the Premises which resulted in damage to the Premises and required the subsequent relocation of occupants of the Premises (the "Fire").

30.     Upon information and belief, the Fire originated in Unit #2 of the Premises.

31.     Upon information and belief, the Trust had leased Unit #2 to three (3) individuals who were Northeastern University "coop" students and/or students of (an)other college(s).

32.     Upon information and belief, the Trust, through Mrs. Petit and/or another

8

authorized agent of the Trust, notified Dadgar of the Fire on or before March 6, 2006.

33.    Dadgar notified Vermont Mutual of the Fire on or about March 6, 2006.

34.    During the course of its investigation of the Fire, Vermont Mutual learned, for the first time, that Northeastern University "coop" students and/or students from other colleges had leased and/or occupied rental units in the Premises at and prior to the time of the Fire.

35.    The Trust has submitted a claim for property coverage under the Vermont Mutual Policy for damage caused by the Fire, which the Trust has estimated to be in excess of Five Hundred Thousand ($500,000.00) Dollars.

36.    On or about April 6, 2006, the Trust submitted a "Sworn Statement in Proof of Loss" (the "Proof of Loss"), executed on behalf of the Trust by Mrs. Petit, to Vermont Mutual. A true copy of the Proof of Loss is attached hereto as Exhibit 5.

37.    The Proof of Loss stated, *inter alia*, that "nothing has been done by or with the privity of consent of the Insured or this affiant, to violate the conditions of the policy or render it void[.]"

38.    In response to inquiries from Vermont Mutual, the Trust, through Mrs. Petit, stated that she had orally disclosed the fact that Northeastern University "coop" students had leased and/or occupied rental units in the Premises to Dadgar at the time that the Trust applied for insurance coverage with Vermont Mutual, *i.e.*, on or about November 4, 2003.

39.    In response to inquiries from Vermont Mutual, the Trust, through Mrs. Petit, stated that Dadgar had informed the Trust, through Mrs. Petit, at the time that the Trust applied for insurance coverage with Vermont Mutual, that Vermont Mutual would classify Northeastern University "coop" students as "working class" occupants, not as "student" occupants, for purposes of determining whether to underwrite property coverage.

40.     In response to inquiries from Vermont Mutual, Dadgar denied that the Trust had informed Dadgar at any time that Northeastern University "coop" students and/or students from other colleges had leased and/or occupied rental units in the Premises, and Dadgar further denied that it had informed the Trust at any time that Vermont Mutual would classify Northeastern University "coop" students as "working class" occupants, not as "student" occupants, for the purpose of determining whether to underwrite property coverage.

41.     Dadgar has further informed Vermont Mutual that, if the Trust had stated that Northeastern University "coop" students and/or students from other colleges had leased and/or occupied rental units at the Premises, Dadgar would not have made a judgment with respect to whether such individuals were "working class" occupants, not "student" occupants, and would have contacted Vermont Mutual's underwriting department for guidance.

## THE PARTIES' DISPUTE WITH RESPECT TO COVERAGE

42.     At all relevant times, Vermont Mutual underwriting guidelines relating to residential real estate containing four (4) or fewer units classified occupants of such real estate who were Northeastern University "coop" students as "student" occupants, not as "working class" occupants, for the purpose of determining whether to underwrite property coverage.

43.     Based upon Vermont Mutual's underwriting guidelines, the information contained in the Executed Form which stated that the occupants of the Premises were "working class" was not factually true and accurate, in that occupants of rental units in the Premises at the time the Trust submitted the Executed Form were Northeastern University "coop" students and Vermont Mutual would have classified such occupants as "students".

44.     In the event that the Trust did not inform Dadgar, at the time that the Trust

applied for insurance coverage with Vermont Mutual or at any other time prior to the time that Vermont Mutual issued the Vermont Mutual Policy, that Northeastern University "coop" students had leased and/or occupied rental units in the Premises, the Vermont Mutual Policy does not provide property coverage for the Trust's claim for damage caused by the Fire because the Trust violated one or more of the "Conditions" of the Vermont Mutual Policy and/or did not comply with the Proof of Loss.

45.    Vermont Mutual has informed the Trust, *inter alia*, that the two versions of what information was discussed or not discussed with respect to the identity of the occupants of units in the Premises at the time the Trust applied for coverage with Vermont Mutual, are mutually exclusive and that Vermont Mutual is therefore seeking additional documentation from the Trust in support of the Trust's version of that event.  The Trust has responded that it has no such additional documentation.  True copies of the May 31, 2006 letter from Peter C. Kober, Esq. to John F. Rossi, Esq. and the June 26, 2006 letter from John F. Rossi, Esq. to Peter C. Kober, Esq. are attached hereto as Exhibits 6 and 7, respectively.

46.    The Trust has demanded, *inter alia*, that Vermont Mutual pay the Trust's claim for property damage coverage under the Vermont Mutual Policy for damage caused by the Fire, and has further stated, *inter alia*, that any attempt by Vermont Mutual to refuse payment due to any "alleged misrepresentations" by Mrs. Petit and Mr. Petit "would likely constitute an unfair or deceptive act or practice pursuant to Chapter 176D, and thereby give rise to a violation of the Massachusetts Consumer Protection [A]ct, Chapter 93A."  A true copy of the June 4, 2006 letter from John F. Rossi, Esq. to Peter C. Kober, Esq. is attached hereto as Exhibit 8.

<strong><u>COUNT I</u></strong>

47.    Vermont Mutual repeats and realleges Paragraphs 1 through 46 above and

11

incorporates them by reference as if they were fully set forth herein.

48.    Upon information and belief, the Trust may have intentionally concealed or misrepresented a material fact or circumstance, engaged in fraudulent conduct and/or made false statements, at the time the Trust applied for insurance coverage from Vermont Mutual, with respect to the leasing and/or occupancy of rental units in the Premises by Northeastern University "coop" students.

49.    By intentionally concealing or misrepresenting a material fact or circumstance, engaging in fraudulent conduct and/or making false statements, the Trust would have violated the "Conditions" for property coverage in the Vermont Mutual Policy, such that there is no property coverage under the Vermont Mutual Policy for damage caused by the Fire.

50.    By violating the "Conditions" for property coverage in the Vermont Mutual Policy and not disclosing such violation in the Proof of Loss, the Trust would have submitted a false statement in the Proof of Loss, such that there is no property coverage under the Vermont Mutual Policy for damage caused by the Fire.

51.    Vermont Mutual accordingly requests judgment that the Vermont Mutual Policy does not provide property coverage for damage caused by the Fire.

### COUNT II

52.    Vermont Mutual repeats and realleges Paragraphs 1 through 46 above and incorporates them by reference as if they were fully set forth herein.

53.    Dadgar, as an authorized insurance agent of Vermont Mutual, was under a duty to disclose to Vermont Mutual any material information known to Dadgar that would affect Vermont Mutual's determination whether to underwrite insurance coverage.

54.    At all relevant times, Dadgar knew that Vermont Mutual underwriting

12

guidelines relating to residential real estate containing four (4) or fewer units classified occupants of such real estate who were Northeastern University "coop" students as "student" occupants, not as "working class" occupants, for the purpose of determining whether to underwrite property coverage.

55.     In the event that, at the time the Trust applied for coverage with Vermont Mutual or at any other time prior to the time that Vermont Mutual issued the Vermont Mutual Policy, the Trust informed Dadgar that Northeastern University "coop" students had leased and/or occupied rental units in the Premises, Dadgar was under a duty to disclose such material information to Vermont Mutual.

56.     In the event that Dadgar had knowledge, at the time that the Trust applied for insurance coverage with Vermont Mutual or at any other time prior to the time that Vermont Mutual issued the Vermont Mutual Policy, that Northeastern University "coop" students had leased and/or occupied rental units in the Premises, then Dadgar's knowledge of such material information is imputed to Vermont Mutual.

57.     Under the circumstances described in Paragraph 56 above, Vermont Mutual cannot assert that the Trust violated the "Conditions" for property coverage in the Vermont Mutual Policy and/or that the Trust submitted a false statement in the Proof of Loss.

58.     Under the circumstances described in Paragraph 56 above, the Vermont Mutual Policy provides property coverage for damage caused by the Fire.

59.     In the event that the Vermont Mutual Policy provides property coverage for damage caused by the Fire, Vermont Mutual's obligation to pay the Trust's claim for damage caused by the Fire is as a direct result of Dadgar's breach of its duty as an agent of Vermont

13

Mutual because Dadgar failed to disclose material information to Vermont Mutual at the time that the Trust applied for coverage.

60.    Vermont Mutual accordingly requests judgment against Dadgar for all damages incurred by Vermont Mutual which were caused by Dadgar's breach of its duty as an authorized agent of Vermont Mutual, including but not limited to any amount that Vermont Mutual is obligated to pay with respect to the Trust's claim for property coverage under the Vermont Mutual Policy for damage caused by the Fire.

## PRAYERS FOR RELIEF

WHEREFORE, Vermont Mutual prays that this Court enter as a judgment in this action the following:

1.    The Trust violated the "Conditions" of the Vermont Mutual Policy and/or submitted a false statement in the Proof of Loss, such that the Vermont Mutual Policy does not provide property coverage for damage caused by the Fire;

2.    Against Dadgar for all damages incurred by Vermont Mutual which were caused by Dadgar's breach of its duty as an authorized agent of Vermont Mutual, including but not limited to for any amount that Vermont Mutual is obligated to pay with respect to the Trust's claim for property coverage under the Vermont Mutual Policy for damage caused by the Fire;

3.    All parties are bound hereto by the judicial declarations entered herein, which terminate the instant controversy among the parties; and

4.    Vermont Mutual is entitled to recover such other and further relief, including legal fees and costs, as the Court deems just and proper.

By its attorneys,

_Peter C. Kober_
Peter C. Kober BBO #276260
Litchfield Cavo, LLP
6 Kimball Lane
Lynnfield, MA 01940
(781) 309-1500

Dated:  July 7, 2006